# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN ESTERHAY, | |
| Plaintiff, | |
| v. | Case No. 3:23-cv-00203-KDB-DCK |
| TEN OAKS MANAGEMENT, LLC; ASTECH HOLDINGS, LLC; AEP LEGACY, INC., formerly known as ASTECH Engineered Products, Inc.; ANDREW LOVROVICH; DAVID RICHESON; and JOHN DOES 1-20; | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS HIS SECOND AMENDED COMPLAINT

Jared E. Gardner (N.C. Bar No. 28275)
Mark S. Pincus (N.C. Bar No. 59036)
Kathryn Cox (N.C. Bar. No. 58514)
GARDNER SKELTON PLLC
505 East Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 335-0350
Facsimile: (704) 390-7027
jared@gardnerskelton.com
mark@gardnerskelton.com
kcox@gardnerskelton.com
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 3

    Defendants Recruit Mr. Esterhay to Serve as ASTECH's CEO......................................... 3

    After Accepting the ASTECH CEO Position, Mr. Esterhay Learns the Truth About Ten
        Oaks's Acquisition of ASTECH and Intent Not to Invest in or Obtain Funding for
        ASTECH ...................................................................................................................... 6

    Defendants Terminate Mr. Esterhay from the ASTECH CEO Position After He
        Complains About and Refuses to Participate in Fraud against Boeing .................. 7

    A.      Motion to Dismiss for Failure to State a Claim ..................................................... 10

I.      THIS COURT SHOULD SUSTAIN MR. ESTERHAY'S STATE LAW RETALIATION
        CLAIMS ...................................................................................................................... 11

    A.      Mr. Esterhay Plausibly Alleges that California Law or, Alternatively, Virigina
        Law Governs his Retaliation Claims ................................................................... 12

    B.      Mr. Esterhay Plausibly Has Stated a California Labor Law § 98.6 Claim Because
        He Alleges that the Entity Defendants Fired Him in Retaliation for Complaining
        about Being Required to Assist in Fraud .............................................................. 14

    C.      Mr. Esterhay Plausibly Has Stated a California Labor Law § 232.5 Claim Because
        He Alleges that the Entity Defendants Fired Him in Retaliation for Complaining
        about Being Required to Assist in Fraud .............................................................. 16

II.     MR. ESTERHAY PLAUSIBLY HAS ALLEGED A CLAIM FOR FRAUDULENT
        INDUCEMENT ........................................................................................................... 16

    A.      Mr. Esterhay Plausibly Has Alleged Actionable Misrepresentations that Support
        His Fraudulent Inducement Claim ....................................................................... 17

    B.      Mr. Esterhay Plausibly Has Established Intent and Reliance Because He Alleges
        that he Rejected His Other Job Offer and Accepted the ASTECH CEO Position
        After and In Reliance on Defendants' Alleged Misstatements........................... 20

III.    MR. ESTERHAY PLAUSIBLY HAS ALLEGED A CLAIM FOR NEGLIGENT
        MISREPRESENTATION............................................................................................. 21

CONCLUSION............................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Phones of N.C., Inc. v. Yahyavi*,
2020 WL 4208923 (E.D.N.C. July 22, 2020) ........................................................................ 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 10, 11

*Baka v. City of Norfolk, Va.*,
2022 WL 757218 (E.D. Va. Mar. 11, 2022) ........................................................................ 12

*Bartlett v. All American Asphalt*,
2020 WL 6118818 (C.D. Cal. Oct. 16, 2020) ...................................................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................ 11

*Bing v. Brivo Sys., LLC*,
959 F.3d 605 (4th Cir. 2020) .............................................................................................. 11

*Boeing Co. v. Ten Oaks Mgmt., LLC*,
2023 WL 4241679 (W.D.N.C. June 28, 2023) .................................................................... 17

*Conroy v. Regents of Univ. of Cal.*,
45 Cal. 4th 1244 (2009) ...................................................................................................... 17

*Fleeman v. Cnty. of Kern*,
2021 WL 5514498 (E.D. Cal. Nov. 24, 2021) .................................................................... 12

*Harco Nat'l Ins. Co.*,
206 N.C. App. 687 (2010) ................................................................................................... 12

*Langford v. Joyner*,
62 F. 4th 122 (4th Cir. 2023) .............................................................................................. 10

*Layton v. Terremark N. Am., LLC*,
2014 WL 2538679 (N.D. Cal. June 5, 2014) ...................................................................... 15

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
225 F. Supp. 3d 1034 (N.D. Cal. 2016) .............................................................................. 21

*Marentes v. State Farm Mut. Automobile Ins. Co.*,
224 F. Supp. 3d 891 (N.D. Cal. 2016) ................................................................................ 17

*Moreno v. UtiliQuest, LLC*,
  29 F. 4th 567 (9th Cir. 2022) ............................................................................... 14

*Movement Mortgage, LLC v. McDonald*,
  2018 WL 6733953 (W.D.N.C. Nov. 6, 2018) ........................................................ 14

*Nejadian v. Cnty. of Los Angeles*,
  40 Cal. App. 5th 703 (2019) ................................................................................. 14

*People ex rel. Garcia Brower v. Kolla's, Inc.*,
  14 Cal. 5th 719 (2023) .......................................................................................... 14

*SciGrip, Inc. v. Osae*,
  373 N.C. 409 (2020) .............................................................................................. 12

*Shaw v. Superior Ct.*,
  2 Cal. 5th 983 (2017) ............................................................................................ 12

*Sinclair v. Mobile 360, Inc.*,
  2007 WL 2344813 (W.D.N.C. Aug. 14, 2007) ..................................................... 21

*Skinner v. Switzer*,
  562 U.S. 521 (2011) .............................................................................................. 11

*St. Myers v. Dignity Health*,
  44 Cal. App. 5th 301 (2019) ................................................................................. 14

*Synovus Bk. v. Coleman*,
  887 F. Supp. 2d 659 (W.D.N.C. 2012) .................................................................. 12

*Tindell v. Murphy*,
  22 Cal. App. 5th 1239 (2018) ............................................................................... 21

*U.S. Airline Pilots Ass'n v. Awappa,* LLC,
  615 F.3d 312 (4th Cir. 2010) ................................................................................ 11

*United States ex rel. Lupo v. Quality Assurance Servs., Inc.*,
  2017 WL 3174542 (S.D. Cal. July 26, 2017) ....................................................... 16

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
  525 F.3d 370 (4th Cir. 2008) ................................................................................ 17

*Vega v. Jones, Day, Reavis & Pogue*,
  121 Cal. App. 4th 282 (2004) ............................................................................... 18

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
  386 F.3d 581 (4th Cir. 2004) ................................................................................ 12

*Vukovic v. Super-Max Corp.*,
 2016 WL 7197549 (C.D. Cal. Feb. 22, 2016) ........................................................................ 15

*Wiener v. AXA Equitable Life Ins. Co.*,
 2021 WL 665112 (W.D.N.C. Feb. 19, 2021) .......................................................................... 12

**Statutes**

Cal. Civ. Code § 1709 ........................................................................................................... 15

Cal. Civ. Code §§ 1710 .......................................................................................................... 15

Cal. Lab. Code § 98.6 ....................................................................................................... 14, 16

Cal. Lab. Code § 232.5 ..................................................................................................... 11, 16

Cal. Lab. Code § 232.5(c) ...................................................................................................... 16

Cal. Labor Code § 1102.5 ............................................................................................... passim

Cal. Labor Code § 1102.5(b) .................................................................................................. 14

Cal. Labor Code § 1102.5(c) ............................................................................................. 14, 15

Va. Code § 40.1-27.3 ....................................................................................................... 11, 12

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................... 17

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 10, 11

Plaintiff John Esterhay respectfully submits this Brief in opposition to Defendants' Rule 12(b)(6) motion to dismiss his Second Amended Complaint ("2AC").

## INTRODUCTION

In March 2022, aerospace supplier ASTECH was so unprofitable and undesirable that its previous owner paid Defendant Ten Oaks Management, LLC ("Ten Oaks") $7 million to relieve it of the burden of owning ASTECH. To avoid pushback from ASTECH's customers and employees, who would not have supported or consented to such a transaction, Ten Oaks and the previous owner concealed the "pay-to-take" nature of the deal. When Defendants (through Ten Oaks principals Defendants Andrew Lovrovich and David Richeson) recruited Plaintiff John Esterhay to become CEO of ASTECH in March 2022, they made multiple statements designed to make the deal appear as a traditional sale and create the impression that Ten Oaks had invested its own money to buy the company, planned to make further investments, and planned to obtain financing for ASTECH to thrive as a company. None of this was true. Reasonably believing there was nothing unusual about Ten Oaks's acquisition and that Ten Oaks was committed to investing in ASTECH, Mr. Esterhay turned down another CEO position and joined ASTECH, not learning the true nature of Ten Oaks' acquisition or plans until after he accepted his offer.

With no intention to invest its own money or seek financing, Defendants' plan for ASTECH was to raise prices for customers, even though they sought and received permission from customers to assume the existing customer contracts (including the pricing terms therein) during the pre-acquisition phase. When tensions escalated with Boeing, one of ASTECH's major customers, over plans to raise prices, Mr. Esterhay attended a May 25, 2022 meeting with certain Boeing employees, other ASTECH managers, and Defendants Richeson and Lovrovich.

1

There, Defendant Lovrovich made representations to Boeing about Ten Oaks's acquisition of and plans for ASTECH that Mr. Esterhay knew to be false. When Mr. Esterhay conspicuously refused to participate in the statements at the meeting and complained the next day that Defendants were making false statements to Boeing and he did not support it, Defendants promptly fired him in retaliation.

The facts surrounding Mr. Esterhay's termination support state law retaliation claims under California and Virginia law. While it is premature for this Court to determine definitively which law applies, Mr. Esterhay's Second Amended Complaint provides facts plausibly demonstrating that California or, alternatively, Virginia law applies. This Court also should reject Defendants' arguments claiming alleged pleading deficiencies because the Second Amended Complaint alleges sufficient facts to meet the relevant pleading standards.

Defendants' challenges to Mr. Esterhay's fraud and negligent misrepresentation causes of action also must fail. Mr. Esterhay has alleged a series of false statements of fact and misleading half-truths that support claims for both fraud and negligent misrepresentation. Further, Defendants' argument that Mr. Esterhay did not plead intent and reliance assumes, without factual support, that Mr. Esterhay accepted the ASTECH CEO position and began holding himself out as ASTECH's CEO before a March 14, 2022 Town Hall meeting where most of the relevant misstatements were made. The well-pled allegations establish, however, that Mr. Esterhay did not accept the ASTECH CEO position until March 16. Although Defendants essentially attack the credibility of these allegations, a motion to dismiss is not a proper vehicle for credibility determinations.

Because Mr. Esterhay plausibly states a claim for each of the causes of action he alleges, this Court should deny Defendants' motion to dismiss the Second Amended Complaint.

2

Plaintiff John Esterhay is an experienced business executive. Defendant Ten Oaks is a Charlotte-based company, in which Defendants Lovrovich and Richeson are principals. On or about March 11, 2022, Ten Oaks (through a subsidiary, Defendant ASTECH Holdings, LLC) acquired ASTECH Engineered Products, Inc. an aerospace and defense supplier which is now known as AEP Legacy, Inc. ("ASTECH"). (2AC, ECF No. 23, at ¶ 17.) This was a "pay-to-take" deal in which ASTECH's previous owner, Melrose (GKN), paid Ten Oaks $7 million to take over ASTECH, which was unprofitable due to unfavorable customer contracts (including with aerospace manufacturer Boeing), poor product quality, and lack of capital investment. (*Id.* at ¶¶ 58, 68-69.) Melrose (GKN) intended the $7 million to compensate Ten Oaks for assuming certain risks and liabilities, to cover the unprofitability of ASTECH's contract with Boeing, to cover liquidation and restructuring costs if necessary, and to provide working capital. (*Id.* at ¶ 70.) Melrose (GKN) and Ten Oaks structured the ASTECH deal so that its "pay-to-take" nature was not publicly known, outwardly treating the $7 million dollar payment as a "pre-close cash contribution for ordinary course working capital" to avoid suspicion, including from customers such as Boeing, who would not have supported or consented to the transaction had they known the truth. (*Id.* at ¶¶ 71-73.)

### *Defendants Recruit Mr. Esterhay to Serve as ASTECH's CEO*

Around February 2022, Defendants Lovrovich and Richeson began recruiting Mr. Esterhay to serve as ASTECH's CEO if Ten Oaks acquired the company. (*Id.* at ¶¶ 20-22.) On March 11, the same day the Ten Oaks completed the ASTECH acquisition, Defendant Lovrovich invited Mr. Esterhay to attend a March 14 "Town Hall session" at ASTECH's offices in Santa Ana, California. (*Id.* at ¶¶ 25-26, 29, 36.) This Town Hall meeting was intended to recruit ASTECH's employees, who all had been administratively terminated because of the acquisition.

3

(*Id.*)  On March 11, Defendant Lovrovich (on behalf of Defendants) also sent Mr. Esterhay a Term Sheet through DocuSign concerning his employment as "CEO or President of ASTECH," which Mr. Esterhay reviewed cursorily on March 13, but did not yet sign or otherwise accept. (*Id.* at ¶¶ 31-35.)  On March 13, Defendant Lovrovich invited Mr. Esterhay to join a conference call with him and Defendant Richeson to review the PowerPoint slides that Defendants Lovrovich and Richeson had prepared for the Town Hall meeting. (*Id.* at ¶ 35.)  Because Mr. Esterhay had not yet accepted any role, he was surprised to learn on the conference call that Defendants had put his name, picture, and biographical information on the PowerPoint and stated that he was associated with Ten Oaks, though it did not identify Mr. Esterhay as ASTECH's CEO. (*Id.* at ¶ 37.)  Mr. Esterhay, however, did not push back because he still was a candidate for the ASTECH CEO role, did not want to offend Defendants, and saw no harm in being added to the slides. (*Id.*)

Based on his conversations with Defendants Lovrovich and Richeson before the Town Hall meeting, Mr. Esterhay had the reasonable impression that Ten Oaks acquired ASTECH through a traditional sale where it paid money to Melrose (GKN) in exchange for ownership. Neither Defendant Lovrovich nor Defendant Richardson disclosed the pay-to-take nature of the transaction.  Rather, in conversations on March 8 and 10, 2022, Defendant Lovrovich referred to the transaction as a "sale" and made references to the "closing price." (*Id.* at ¶¶ 22-26.)  Also, during the March 13 preparation call, Mr. Esterhay reviewed slides containing the following statements that Defendant Richeson presented in person to Mr. Esterhay and the other potential ASTECH recruits at the Town Hall meeting the next day, namely:

- "On March 11, 2022, GKN Aerospace completed the sale of ASTECH to a portfolio company of the Ten Oaks Group"

4

- "Because we invest our own money, we make decisions that are right for our companies, not bankers and institutional investors"

- "Ten Oaks Group is a family office headquartered in Charlotte, NC and exclusively focused on investing in corporate divestitures"

- "Ten Oaks is a 'Family Office' investment group . . . not a 'Private Equity' investor"

(*Id.* at ¶¶ 41-42.)  Defendant Lovrovich, appearing by videoconference, also stated that "ASTECH is an *ideal investment* for Ten Oaks" and that "Ten Oaks' resources, experience, and *focus on investment in the business*, combined with a more flexible management structure will allow ASTECH to thrive." (*Id.* at ¶ 43.)  After the presentation, one potential ASTECH employee in the audience told Mr. Esterhay that the employee "really liked the presentation and especially that Ten Oaks is a *family office* and that they *invested their own money*." (*Id.* at ¶ 44).)  At the Town Hall meeting, Mr. Esterhay never held himself out as ASTECH's CEO or acted as if he accepted an offer, which he had not yet done. (*Id.* at ¶ 39.)

On March 15, Defendants presented Ten Oaks's Transition Service Agreement with Melrose (GKN), which stated that Ten Oaks had purchased ASTECH from Melrose (GKN) and that Melrose (GKN) had sold ASTECH.   (*Id.* at ¶ 47.)  At a recruiting dinner on the night of March 15, Defendant Lovrovich also represented that Ten Oaks planned to obtain financing for ASTECH in the form of an asset-backed loan and would start the process of obtaining an independent appraisal of the market value of its fixed assets, which was necessary to secure such a loan. (*Id.* at ¶¶ 50-51.)  This was consistent with a March 11 phone call where Defendant Lovrovich similarly stated to Mr. Esterhay that this was Ten Oaks's intent. (*Id.* at ¶ 84.)

These statements, however, were knowingly false and/or misleading.  The transaction by which Ten Oaks acquired ASTECH was a pay-to-take, not a sale; Ten Oaks had not invested its own money in ASTECH and did not intend to do so, Ten Oaks was not exclusively focused on

investing in corporate divestitures (but rather was involved in pay-to-take deals as well), and Ten Oaks had no intention to obtain financing for ASTECH. (*Id.* at ¶¶ 57-82.)

Unaware of Defendants' false and misleading portrayal of the ASTECH acquisition and their plans for ASTECH, Mr. Esterhay turned down another CEO job offer with Bay Area Retina Associates on March 15 and accepted the ASTECH CEO role by signing the Term Sheet through DocuSign around 9:06 AM Pacific Time on March 16, 2022. (*Id.* at ¶¶ 48, 51.)

***After Accepting the ASTECH CEO Position, Mr. Esterhay Learns the Truth About Ten Oaks's Acquisition of ASTECH and Intent Not to Invest in or Obtain Funding for ASTECH***

On the night of March 16, Mr. Esterhay (who had accepted the ASTECH CEO position earlier that day) attended a dinner party at Ten Oaks Co-Founder Michael Hahn's house in Beverly Hills, California, which, among other things, was intended to celebrate the recently completed acquisition of ASTECH. (*Id.* at ¶ 57.)  During the car ride to the party with Defendant Lovrovich and through conversations with Mr. Hahn at the party, Mr. Esterhay learned for the first time that:

- The ASTECH acquisition was a pay-to-take deal and Ten Oaks had not invested any of its own money in ASTECH and did not intend to do so (*id.* at ¶¶ 57-59);

- Ten Oaks took control of ASTECH as a "service" to help Melrose (GKN) divest an unwanted investment without lengthy due diligence or public exposure (*id.* at ¶¶ 60-62);

- Ten Oaks intentionally did little diligence on ASTECH (*id.* at ¶¶ 63-67);

- Among the reasons Melrose (GKN) wanted to dispose of ASTECH was a "highly unprofitable" contract with Boeing (*id.* at ¶¶ 68-69);

- The $7 million "pay-to-take" payment from Melrose (GKN) to Ten Oaks was intended to compensate Ten Oaks for certain risks, liabilities, and costs and had been disguised as a "pre-close cash contribution for ordinary course working capital" to avoid suspicions from Boeing and other customers, who would have withheld their consent to the transaction if they knew the truth (*id.* at ¶¶ 70-73);

6

- Melrose (GKN) would not exercise its contract option to extend ASTECH's lease with its landlord and Ten Oaks would be responsible for negotiating renewal or making other arrangements (purchase of the facility, relocation, or shutdown) if it could not obtain renewal (*id.* at ¶¶ 74-76);

- Ten Oaks charged management fees retroactively (*id.* at ¶¶ 77-78);

- Ten Oaks used the term "family office" deceptively, capitalizing on its vagueness to tailor its narrative about its operations to its audience (*id.* at ¶¶ 79-82).

Mr. Esterhay also learned from Defendant Richeson after the dinner that (a) Defendants never intended to obtain an asset-backed loan for ASTECH because they did not want any lender to have a lien on ASTECH's fixed assets and (b) Defendants had hired Hilco Valuation Services to appraise ASTECH in preparation for a liquidation or reorganization but had created the cover story that the appraisal was to apply for financing to avoid suspicion. (*Id.* at ¶¶ 90-93.)

Despite this, Mr. Esterhay performed his job as CEO of ASTECH with an eye on improving the company and developing rapport with customers, including Boeing. (*See id.* at ¶¶ 93-104.) On Monday mornings, Mr. Esterhay would travel from his home in Charlottesville, Virginia to ASTECH's principal and only business location in Santa Ana, California, which contains its offices and manufacturing facility. (*Id.* at ¶ 96.) On Mondays through Thursdays, Mr. Esterhay worked out of ASTECH's California offices, overseeing the manufacturing facility, managing employees, and meeting with customers and vendors. (*Id.*) While Mr. Esterhay handled some calls and paperwork from his home in Virginia on the weekends, he performed nearly all of his work for ASTECH in California. (*Id.*)

### *Defendants Terminate Mr. Esterhay from the ASTECH CEO Position After He Complains About and Refuses to Participate in Fraud against Boeing*

Mr. Esterhay became "concerned about the practical considerations and future of the ASTECH business" if Defendants intended to make zero investment in ASTECH and not obtain financing. (*Id.* at ¶ 95.) Mr. Esterhay felt Defendants were intentionally causing serious liquidity

7

issues for ASTECH, impairing its ability to service customers or make the improvements that Defendants had committed publicly to making. (*Id.*)  Without funds from Ten Oaks's investments or from financing, Defendants' only way to sustain ASTECH was to force price increases from existing customers, despite Defendants' previous acceptance of all ASTECH contracts, including pricing terms. (*Id.* at ¶¶ 109-110.)  This put Mr. Esterhay in a difficult position with Boeing and other customers, who generally explained that they had consented to Ten Oaks's acquisition of ASTECH in reliance on Defendants' representation that they had understood the existing contracts, including their pricing terms; that Ten Oaks would assume the existing contracts; and that Ten Oaks would invest its financial resources and also seek financing. (*Id.* at ¶ 105.)

Boeing did not respond favorably to ASTECH's May 19, 2022 demand letter (sent by Mr. Esterhay at Defendants' insistence) threatening manufacturing shutdowns if Boeing did not agree to price increases. (*Id.* at ¶¶ 109-114.)  At the direction of Defendants, Mr. Esterhay wrote to Boeing on May 23 that ASTECH had "paused all manufacturing and shipping," a decision that hurt Boeing by exacerbating scheduling delays and product quality issues (*Id.* at ¶¶ 126-128.) Escalating tensions culminated in a May 25, 2022 meeting at Boeing's Everett, Washington offices, which included Defendant Lovrovich, Mr. Esterhay, other ASTECH managers, and multiple vice presidents and directors for Boeing in person, and Defendant Richeson by video conference. (*Id.* at ¶¶ 115-135.)

During this meeting, Defendant Lovrovich knowingly made the following false representations designed to appease and mislead Boeing about Defendants' past actions and plans for ASTECH's future:  (a) that Ten Oaks invested in and would continue to invest in ASTECH (even though Ten Oaks acquired ASTECH in a pay-to-take deal and had no intention

8

of investing its own money); (b) that Ten Oaks was seeking financing for ASTECH (even though it had no intention to do so); (c) that Ten Oaks would extend ASTECH's facility lease (when the Landlord already told Ten Oaks it would not renew the lease under its current terms); (d) that Ten Oaks had no plans to sell ASTECH and did not engage in quick resales (even though that was Ten Oaks's intention); (e) that Ten Oaks did not charge ASTECH management fees (even though it intended to do so retroactively); and (f) that Defendant Lovrovich had relevant experience in aerospace and defense (when he did not). (*Id.* at ¶¶ 139-170.) Concerned that Defendants had committed fraud against Boeing, Mr. Esterhay refused to participate in these misstatements, even conspicuously declining to speak during the meeting when Defendant Lovrovich motioned for him to do so regarding Defendants' past and intended future investments in ASTECH. (*Id.* at ¶ 141, *see id* at ¶¶ 139-170.)

After the meeting, Defendant Lovrovich declined to speak or interact with Mr. Esterhay, who reasonably attributed Defendant Lovrovich's conduct to his frustration that Mr. Esterhay had refused to support or echo the misrepresentations Defendants to Boeing during the meeting. (*Id.* at ¶ 172.)

After Mr. Esterhay returned to California on May 26, 2022, Defendant Richeson asked Mr. Esterhay to call him, which he did at noon Pacific time. (*Id.* at ¶ 175.) On the call, Defendant Richeson expressed his and Defendant Lovrovich's disappointment that Mr. Esterhay remained silent at the meeting, stated it was unacceptable, and accused Mr. Esterhay of "throwing [Defendant Lovrovich] under the bus." (*Id.* at ¶¶ 175-177.) In response, Mr. Esterhay stated that he would "not condone or support obvious misrepresentations to Boeing. It's unethical, and it's illegal. I will not echo statements to Boeing that are contrary to what you, [Defendant Lovrovich], and others have previously told me" because "[d]oing so is false and

misleading to Boeing." (*Id.* at ¶ 178.) Defendant Richeson became "incensed" and told Mr. Esterhay that Defendant Richeson would "take more of an executive chairman role and get more involved in all the meetings" and that Mr. Esterhay would be taking direction from Defendant Richeson going forward. (*Id.* at ¶ 179.) Perceiving retaliation, Mr. Esterhay contacted Defendant Lovrovich to complain further, but Defendant Lovrovich would not respond. (*Id.* at ¶ 180.) At the weekly Sales, Inventory & Operations Planning meeting among Mr. Esterhay and senior managers, Defendant Richeson joined late by videoconference and interrupted the meeting several times to undermine Mr. Esterhay. (*Id.* at ¶ 184.) After the meeting, Mr. Esterhay finally received a responsive text from Mr. Lovrovich, who initially promised to call later in the day on May 26, but then stated he could speak the next day (May 27). (*Id.* at ¶¶ 185-187.)

Mr. Esterhay returned to Virginia on the morning of May 27. (*Id.* at ¶ 188.) Later that day, Defendant Richeson texted Mr. Esterhay that both he and Defendant Lovrovich wanted to speak with Mr. Esterhay over a video conference call. (*Id.*) After Mr. Esterhay joined the video conference, Defendants told him he had been terminated from all roles, effective immediately. (*Id.*) Although Defendants stated no reason, Mr. Esterhay maintains the reason was obvious—he had been fired for complaining about and refusing to support Defendants' fraud against Boeing. (*Id.*) Boeing later sued Ten Oaks, Defendant Lovrovich, and Defendant Richardson for fraud in *Boeing Co. v. Ten Oaks Mgmt., LLC*, 3:22-cv-00481 (W.D.N.C.), which remains pending in this Court.

## LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F. 4th 122, 124 (4th Cir.

2023).  A court must deny a Rule 12(b)(6) motion to dismiss if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has "facial plausibility" when it allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  To survive a Rule 12(b)(6) motion to dismiss, a complaint need only plead enough facts to "raise a reasonable expectation that discovery will reveal evidence" of the alleged activity. *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010).  Therefore, a plaintiff opposing a motion to dismiss need only demonstrate that the complaint "is sufficient to cross the federal court's threshold," not that he or she "will ultimately prevail." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011). Based on these requirements, a court's duty on a motion to dismiss is merely to "test the sufficiency of a complaint" not to "resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020).

## ARGUMENT

**I.    THIS COURT SHOULD SUSTAIN MR. ESTERHAY'S STATE LAW RETALIATION CLAIMS** [1]

Each of Mr. Esterhay's California and Virginia state law retaliation claims (Third through Seventh Causes of Action) should survive dismissal.[2]

---

[1] Mr. Esterhay withdraws his *Tameny* claim for wrongful termination (Third Cause of Action) and California Labor Code § 232.5 claims (Sixth Cause of Action) against Defendants Lovrovich and Richeson only. (*See* Motion Br., ECF No. 24-1 at 20-21.)  This Brief's general references to Mr. Esterhay's state law retaliation claims do not include these withdrawn claims.

[2] Although Defendants argue that Mr. Esterhay did not allege how California or Virginia law applies, they do not dispute (other than on choice of law grounds) that Mr. Esterhay plausibly has alleged a *Tameny* claim for wrongful termination against the Entity Defendants, a Cal. Labor Code § 1102.5 claim against all Defendants, and a Va. Code § 40.1-27.3 claim against all Defendants. (*See* 2AC at Third, Fourth, and Seventh Causes of Action.)

This Court should not dismiss any of Mr. Esterhay's retaliation claims (Third through Seventh Causes of Action) on choice of law grounds. Mr. Esterhay plausibly alleges that California law or, alternatively, Virginia law governs his claims.

A federal court exercising diversity jurisdiction must apply the forum state's choice of law rules. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004). Mr. Esterhay's retaliation claims sound in tort.[3] To determine the choice of law for tort or tort-like claims, North Carolina courts follow the rule of *lex loci delicti*, applying the substantive law of the state "where the injury or harm was sustained or suffered." *SciGrip, Inc. v. Osae*, 373 N.C. 409, 420 (2020) (quoting *Harco Nat'l Ins. Co.*, 206 N.C. App. 687, 695 (2010)).

For tort claims alleging economic injuries, North Carolina "courts have considered the injury to be sustained where the economic loss is felt." *Synovus Bk. v. Coleman*, 887 F. Supp. 2d 659, 669 (W.D.N.C. 2012) (internal quotations omitted); *see Wiener v. AXA Equitable Life Ins. Co.*, 2021 WL 665112, at *4 (W.D.N.C. Feb. 19, 2021), *rev'd on other grounds*, 58 F.4th 774 (4th Cir. 2023) (noting court decisions holding that the place of economic injury is "the state in which the injury itself is felt, rather than the state where the injurious act occurred"). While economic loss "may be suffered in the state of the plaintiff's residence or principal place of business, courts routinely have rejected applying a bright line rule in determining the situs of the injury." *Synovus Bk. v. Coleman*, 887 F. Supp. 2d 659, 669 (W.D.N.C. 2012).

---

[3] *See Baka v. City of Norfolk, Va.*, 2022 WL 757218, at *5 (E.D. Va. Mar. 11, 2022) (denying city's motion to dismiss Va. Code § 40.1-27.3 retaliation claim because city did not have sovereign immunity from tort liability); *Fleeman v. Cnty. of Kern*, 2021 WL 5514498, at *2 (E.D. Cal. Nov. 24, 2021); *Bartlett v. All American Asphalt*, 2020 WL 6118818, at *4 (C.D. Cal. Oct. 16, 2020) (recognizing Cal. Labor Code § 1102.5 and 98.6 claims as torts); *Shaw v. Superior Ct.*, 2 Cal. 5th 983, 987-88 (2017) (recognizing that *Tameny* claim is a "tort cause of action for wrongful termination).

Because Mr. Esterhay claims economic injuries resulting from the wrongful termination of his employment, the choice of law hinges on the state where Mr. Esterhay felt these economic injuries, not where Defendants Richeson or Lovrovich were located when they terminated Mr. Esterhay. (Motion Br., ECF No. 24-1, at 19-20.) Although Defendants argue that Mr. Esterhay's claimed injuries were not "financial" and therefore not subject to the choice of law standards for economic injuries (*id.* at 19), Mr. Esterhay's wrongful termination claims specifically seek economic damages resulting from "lost earnings and other employment benefits" and "loss of employment related opportunities." (2AC, ECF No. 23, at ¶¶ 207, 213, 219, 227, 233.)

The Second Amended Complaint demonstrates that Mr. Esterhay felt the economic effects of his wrongful termination from ASTECH in California. ASTECH's principal and only business location is its Santa Ana, California headquarters, which contains its offices and manufacturing facility. (2AC, ECF No. 23, at ¶ 96.) On Mondays through Thursdays, Mr. Esterhay worked out of ASTECH's California offices, overseeing the manufacturing facility, managing employees, and meeting with customers and vendors. (*Id.*) While Mr. Esterhay may have handled some calls and paperwork from his home in Virginia on the weekends, he performed nearly all of his work for ASTECH in California. (*Id.*) Alternatively, Mr. Esterhay felt the economic effects of his wrongful termination from ASTECH in Virginia, where he was domiciled during his time at ASTECH, received notice of his termination, currently lives while he remains unemployed, and paid taxes on his income from ASTECH. (2AC, ECF No. 23, at ¶¶ 96, 188-89.)

Although this Court should reject Defendants' invitation to dismiss the retaliation claims on choice of law grounds, it need not make a final determination whether California or Virginia law applies. Based on the fact-intensive nature of choice of law inquiries, courts "do not

typically resolve choice of law disputes on a motion to dismiss, rather, they ask whether the plaintiff states a claim under one of the potentially applicable bodies of law." *ABC Phones of N.C., Inc. v. Yahyavi*, 2020 WL 4208923, at \*5 (E.D.N.C. July 22, 2020); *Movement Mortgage, LLC v. McDonald*, 2018 WL 6733953, at \*3 (W.D.N.C. Nov. 6, 2018) (holding, in case where plaintiff asserted tort claims under two states' laws, that it was "premature" to decide which state's law applied). Mr. Esterhay plausibly alleges violations of the California and Virginia retaliation statutes under which his Third through Seventh Causes of Action arise, which is sufficient for this stage of the case.

**B.      Mr. Esterhay Plausibly Has Stated a California Labor Law § 98.6 Claim Because He Alleges that the Entity Defendants Fired Him in Retaliation for Complaining about Being Required to Assist in Fraud**

This Court should sustain Mr. Esterhay's California Labor Code § 98.6 claim (Fifth Cause of Action). To state a claim under California Labor Code § 98.6, a plaintiff-employee must show that (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the two. *See Moreno v. UtiliQuest, LLC*, 29 F. 4th 567, 575 (9th Cir. 2022); *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 215 (2019).

Under Section 98.6, protected activity includes engaging in conduct protected by Section 1102.5. *See People ex rel. Garcia Brower v. Kolla's, Inc.*, 14 Cal. 5th 719, 731-32 (2023) (holding that Section 98.6 "incorporates" violations of Section 1102.5"). Protected activity under Section 1102.5(b) includes "disclosing information" to "a person with authority over the [plaintiff-employee]" if "the [plaintiff-employee] has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(b); *see Nejadian v. Cnty. of Los Angeles*, 40 Cal. App. 5th 703, 718 (2019). Protected activity under Section

14

1102.5(c) includes "refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule regulation." Cal. Lab. Code § 1102.5(c).

A plaintiff-employee may premise a Section 1102.5 claim on allegations that his employer terminated him in retaliation for reporting fraud or deceit, which California has codified as Cal. Civ. Code §§ 1709 and 1710. *Vukovic v. Super-Max Corp.*, 2016 WL 7197549, at *4-*5 (C.D. Cal. Feb. 22, 2016) (denying motion to dismiss and rejecting argument that complaints about "fraud between two private entities" cannot support a Section 1102.5 claim); *Layton v. Terremark N. Am., LLC*, 2014 WL 2538679, at *6 (N.D. Cal. June 5, 2014) (denying motion to dismiss Section 1102.5 claim premised on statutory fraud and deceit). Under California Civ. Code § 1709, a defendant commits fraud by "willfully deceiv[ing] another with intent to induce him to alter his position to his injury or risk." *Id.* Under Cal. Civ. Code § 1710, deceit includes suggesting a fact one knows not to be true, asserting a fact with no reasonable belief it is true, and making promises without intent to perform. *Id.*

The Second Amended Complaint alleges that Defendants fired Mr. Esterhay because he complained about and refused to participate in Defendants' alleged willfully and knowingly false statements to Boeing, specifically that Ten Oaks invested in and would continue to invest in ASTECH, even though Ten Oaks acquired ASTECH in a pay-to-take deal and had no intention of investing its own money; (b) that Ten Oaks would seek financing for ASTECH, even though it had no intention to do so; (c) that Ten Oaks would extend ASTECH's facility lease, when the Landlord already told Ten Oaks it would not renew the lease under its current terms; (d) that Ten Oaks had no plans to sell ASTECH and did not engage in quick resales, even though that was Ten Oaks's intention; (e) that Ten Oaks did not charge ASTECH management fees, even though

15

it intended to do so retroactively; and (f) that Defendant Lovrovich had relevant experience in aerospace and defense, when he did not. (2AC, ECF No. 15, at ¶¶ 139-170.)

Because Mr. Esterhay alleges that Defendants terminated him because he reported a violation of Cal. Labor Code Section 1102.5, he plausibly has alleged a claim under Cal. Labor Code Section 98.6.

### C. Mr. Esterhay Plausibly Has Stated a California Labor Law § 232.5 Claim Because He Alleges that the Entity Defendants Fired Him in Retaliation for Complaining about Being Required to Assist in Fraud

This Court should sustain Mr. Esterhay's California Labor Code § 232.5 claim (Sixth Cause of Action). Section 232.5 provides that no employer may "discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." Cal. Lab. Code § 232.5(c). As Defendants' own cited case has held, complaining about "being required to assist in fraud" is actionable as a "disclosure of working conditions" under Section 232.5. *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 2017 WL 3174542, at \*7, \*9 (S.D. Cal. July 26, 2017).

As discussed above in Section I.B of this Brief, Mr. Esterhay claims that Defendants fired him from his CEO position at ASTECH because he complained about and refused to support Defendants' attempt to defraud Boeing. (2AC, ECF No. 23, at ¶¶ 178-189.). This plausibly alleges a Section 232.5 claim.

### II. MR. ESTERHAY PLAUSIBLY HAS ALLEGED A CLAIM FOR FRAUDULENT INDUCEMENT

This Court should sustain Mr. Esterhay's First Cause of Action, which plausibly states a claim for fraudulent inducement. Under California law, a plaintiff claiming fraudulent inducement must establish that (1) defendant made a material misrepresentation, (2) with knowledge of its falsity, and (3) intent to induce plaintiff's reliance, and that (4) plaintiff

justifiably relied on the misrepresentation and (5) suffered damage as a result. *See Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1255 (2009).  To satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement for fraud claims, a plaintiff must describe the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008); *Boeing Co. v. Ten Oaks Mgmt., LLC*, 2023 WL 4241679, at *3 (W.D.N.C. June 28, 2023) (Bell, J.).  This often is referred to as the "who, what, when, where, and how of the alleged fraud." *Id.*  Mental conditions, such as intent and knowledge are not subject to Rule 9(b)'s particularity requirement and may be pled generally. Fed. R. Civ. P. 9(b).

As discussed below, Mr. Esterhay has alleged sufficient facts to withstand Defendants' challenges concerning whether Mr. Esterhay plausibly pled actionable misrepresentations or the elements of intent and reliance.

### A. Mr. Esterhay Plausibly Has Alleged Actionable Misrepresentations that Support His Fraudulent Inducement Claim

Mr. Esterhay plausibly has alleged that Defendants made actionable misrepresentations supporting his claim that Defendants fraudulently induced him to accept the position as ASTECH's CEO.  Although a misrepresentation under California law "is generally only actionable if the misrepresentation concerns past or existing material facts," a "promise to do something in the future may constitute intentional promissory fraud if it was made without any intention to perform." *Marentes v. State Farm Mut. Automobile Ins. Co.*, 224 F. Supp. 3d 891, 920 (N.D. Cal. 2016).  Also, even where no duty to disclose would otherwise exist, "where one does speak[,] he must speak the whole truth" to avoid "conceal[ing] any facts which materially

17

qualify those stated" because "the telling of a half-truth calculated to deceive is fraud." *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004).

Mr. Esterhay alleges that Defendants made misleading statements designed to convince Mr. Esterhay (and other potential employees) that Ten Oaks had acquired ASTECH by investing its own money and would invest further in the business. In truth, Ten Oaks had received $7 million in a pay-to-take deal to relieve Melrose (GKN) of its ownership of unwanted and unprofitable ASTECH and had no intention of investing further. According to Mr. Esterhay, Defendant Lovrovich referred to the ASTECH acquisition multiple times between March 8-10, 2022 as a "sale" with a "closing price," a statement echoed by Defendant Richeson at the March 14 Town Hall meeting, when he declared that "GKN Aerospace completed the *sale of ASTECH* to a portfolio company of the Ten Oaks Group." (2AC, ECF No. 23, at ¶¶ 22-23, 25-26, 42.) Defendant Richeson also allegedly stated to Mr. Esterhay and other potential employees at the Town Hall session that "[b]ecause we *invest our own money*, we make decisions that are right for our companies," that "Ten Oaks Group is a family office . . . exclusively focused on investing in corporate divestitures," and that "Ten Oaks is a 'Family Office' investment group . . . not a 'Private Equity' investor." (*Id.* at ¶ 42.) At the Town Hall meeting, Defendant Lovrovich allegedly asserted that "ASTECH is an *ideal investment* for Ten Oaks" and that "Ten Oaks' resources, experience, and *focus on investment in the business*, combined with a more flexible management structure will allow ASTECH to thrive." (*Id.* at ¶ 43.) Finally, Defendant Lovrovich told Mr. Esterhay during a recruitment-oriented dinner and car ride on March 15 that Ten Oaks planned to obtain an asset-backed loan for ASTECH. (*Id.* at ¶¶ 49-50.)

Defendants fail to demonstrate that any of the above alleged misstatements are legally insufficient to support a fraud claim. Despite Defendants' arguments, the relevant portions of

18

Defendant Lovrovich's statements that "ASTECH is an ideal investment for Ten Oaks" and that "Ten Oaks' . . . focus on investment in the business . . . will allow ASTECH to thrive" are not statements of opinion. (*See* Motion Br., ECF No. 24-1, at 13-14.) Mr. Esterhay is not concerned with Defendant Lovrovich's opinion on the quality of ASTECH's investment or what would help ASTECH thrive. (*See id.*) Rather, Mr. Esterhay claims he was misled by Defendant Lovrovich's deceptive use of the word "investment," which helped create the false impression that Ten Oaks made an investment in ASTECH at the time of the Town Hall session and intended to focus on investing in ASTECH in the future to help it succeed. (*See* 2AC, ECF No. 23, at ¶ 43.)

Defendants also cannot exclude the alleged misstatements about Defendants' plans to obtain an asset-backed loan for ASTECH because a promise to do something in the future is actionable as a fraudulent misstatement if the speaker had no intent to perform. (*See* Motion Br., ECF No. 24-1, at 14-15.) Here, Mr. Esterhay alleged that, after he joined ASTECH, Defendant Richeson told him that Defendants did not want ASTECH to apply for financing because they did not want any lender to have a lien on ASTECH's fixed assets. (2AC, ECF No. 23, at ¶ 91.) Although Defendants argue that their alleged hiring of an appraiser shows effort to obtain financing, Mr. Esterhay alleges that this was a cover story so that the appraiser could perform its work without raising suspicion of liquidation or reorganization. (*Id.* at ¶¶ 91-93.) Also, Mr. Esterhay pled that Defendant Richeson specifically told him that Defendants had commissioned the appraisal report to understand the value of ASTECH's fixed assets in case of liquidation or reorganization. (*Id.* at ¶ 91.)

Finally, Defendants cannot exclude Defendant Richeson's four statements at the Town Hall meeting. (*See* Motion Br., ECF No. 24-1, at 15-16.) The implication of the pay-to-take deal is that ASTECH was such an unprofitable company with such a pessimistic future that its owner

19

would rather pay someone else to take ASTECH over than continue to run it or attempt to sell it. It is plausible that Defendants wanted to make ASTECH's status and future look more attractive to potential employees by mischaracterizing Ten Oaks's acquisition of ASTECH as a traditional sale rather than a pay-to-take arrangement. Therefore, any statement that Ten Oaks's acquisition of ASTECH was a "sale" or "investment," or that Ten Oaks was a family office (implied to be investing its own money) was at least a misleading half-truth if not an outright falsehood.

Mr. Esterhay plausibly has pled actionable misrepresentations supporting his fraud claim and this Court should reject Defendants' arguments to the contrary.

**B.      Mr. Esterhay Plausibly Has Established Intent and Reliance Because He Alleges that he Rejected His Other Job Offer and Accepted the ASTECH CEO Position After and In Reliance on Defendants' Alleged Misstatements**

Mr. Esterhay sufficiently has alleged the elements of intent and reliance. Defendants claim that the alleged misstatements at the March 14, 2022 Town Hall session did not, and could not have been intended to, induce Mr. Esterhay's reliance because Mr. Esterhay already had accepted the ASTECH CEO position and was holding himself out as ASTECH's CEO. (Motion Br., ECF No. 24-1, at 10-12.) Mr. Esterhay, however, never alleged this anywhere and none of Defendants' cited paragraphs support such an assertion. (*See id*) (citing 2AC, ECF No. 23, at ¶¶ 24-29, 35-37.) Although Mr. Esterhay alleges that he was invited to preview slides for the Town Hall session, spoke there about his background, and was presented as being "associated with Ten Oaks," he specifically alleges that he had not accepted the ASTECH CEO position at this time and did not hold himself out as ASTECH's CEO during the session. (*See id.* at ¶¶ 37, 39.) In fact, Mr. Esterhay alleges that he participated in the session because he wanted to preserve his candidacy for the role, not because he already had accepted it. (*See id* at ¶ 37.) Further establishing that he had not accepted the ASTECH CEO role as of the Town Hall session, Mr. Esterhay alleges that he (a) declined a CEO job offer from Bay Area Retina Associates on March

20

15, 2022, in reliance on Defendants' previous misstatements; (b) was further recruited by Defendant Lovrovich on March 15 at dinner, and that (c) he finally accepted the offer to work for ASTECH by signing the Term Sheet on March 16, 2022, in reliance on Defendants' misstatements through March 15. (2AC, ECF No. 23, at ¶¶ 48-51.)

Defendants' intent and reliance arguments seek to discredit the Second Amended Complaint's well-pled allegations. A Rule 12(b)(6) motion to dismiss, however, "is not . . . a vehicle for testing the veracity of plaintiff's allegations or for the court to determine who is more credible." *Sinclair v. Mobile 360, Inc.*, 2007 WL 2344813, at \*3 (W.D.N.C. Aug. 14, 2007). Because Mr. Esterhay has alleged sufficient facts to support the elements of intent and reliance, this Court should sustain Mr. Esterhay's fraud claim.

## III. MR. ESTERHAY PLAUSIBLY HAS ALLEGED A CLAIM FOR NEGLIGENT MISREPRESENTATION

This Court should sustain Mr. Esterhay's Second Cause of Action, which plausibly states a claim for negligent misrepresentation. Under California law, a plaintiff claiming fraudulent inducement must establish that (1) defendant made a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, and that (4) plaintiff justifiably relied on the misrepresentation, and (5) suffered damage as a result. *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1252 (2018). Although negligent misrepresentation claims only may arise from positive assertions, "misleading half-truths" may satisfy the positive assertion requirement. *Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1042 (N.D. Cal. 2016).

Despite Defendants' claims, the alleged misstatements consist of positive assertions and half-truths and therefore are actionable. (*See* Section II.A, *supra*.) Further, Defendants'

argument that Mr. Esterhay did not plausibly allege the elements of intent and reliance fail for the same reasons as Defendants' same arguments against Mr. Esterhay's fraud claim. (*See* Section II.B, *supra.*)  This Court therefore should sustain Mr. Esterhay's claim for negligent misrepresentation.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss in its entirety.

This the 22nd day of September, 2023.

   s/ Mark S. Pincus               
Jared E. Gardner (N.C. Bar No. 28275)
Mark S. Pincus (N.C. Bar No. 59036)
Kathryn Cox (N.C. Bar. No. 58514)
GARDNER SKELTON PLLC
505 East Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 335-0350
Facsimile: (704) 390-7027
jared@gardnerskelton.com
mark@gardnerskelton.com
kcox@gardnerskelton.com
*Attorneys for Plaintiff*
