IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00203-KDB-DCK

| | |
|---|---|
| JOHN ESTERHAY,<br><br>    Plaintiff,<br><br>    v.<br><br>TEN OAKS MANAGEMENT,<br>LLC; ASTECH HOLDINGS, LLC;<br>JOHN DOES 1-20;<br>ANDREW LOVROVICH;<br>AEP LEGACY, INC.; AND<br>DAVID RICHESON;<br><br>    Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants Ten Oaks Management, LLC ("Ten Oaks"), ASTECH Holdings, LLC ("ASTECH"), AEP Legacy, Inc., formerly known as ASTECH Engineered Products, Inc. ("AEP"), Andrew Lovrovich ("Lovrovich"), and David Richeson's ("Richeson") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 24). The Court has carefully considered this motion and for the reasons discussed below, the Court will **GRANT in part** and **DENY in part** the motion.

                I.       LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient

1

allegations "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see Twombly*, 550 U.S. at 555 (A claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements."). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted). In other words, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

The claims in this case arise out of Plaintiff John Esterhay's tenure as the CEO of ASTECH, a supplier of all-welded honeycomb metallic aerostructures that serves the global aerospace and defense industry. *See* Doc. No. 23 at ¶ 14. In 2018, ASTECH was acquired by

2

Melrose Industries PLC ("Melrose") from a British aerospace manufacturing company, GKN Ltd. *Id.* at ¶¶ 15-16. Four years later, Melrose sought to sell the company to Ten Oaks. *Id.* at ¶ 17.

Selling ASTECH was complicated because any prospective buyer needed to obtain the consent of The Boeing Company ("Boeing"), a large aerospace company which held important contractual rights with respect to the ASTECH business. *Id.* at ¶ 22.[1] Towards that end, Defendants created a business presentation in February 2022 entitled "Introduction to Ten Oaks Group," which they allegedly shared with Boeing to make it more comfortable with the acquisition. *Id.* at ¶ 19. At the same time, Defendants began to recruit Plaintiff to be CEO of ASTECH. *Id.* at ¶¶ 18-20. In early March, Defendants David Richeson, a member of ASTECH Holdings, LLC, and Andrew Lovrovich, a member of Ten Oaks Management, LLC, each spoke with Plaintiff to recruit him for the role. *Id.* at ¶ 21-22. Lovrovich eventually sent Plaintiff a written "Terms Sheet" offer to be ASTECH's CEO, which was conditioned upon Ten Oaks closing the sale of ASTECH. *Id.* at ¶ 22. In the same timeframe, Plaintiff was also being recruited by another company, Bay Area Retina Associates ("Bay Area Retina"), which also made him an offer to be CEO. *Id.* at ¶ 48.

On March 10, 2022, Lovrovich informed Plaintiff that Defendants had "[j]ust confirmed the *closing price* with GKN" and were looking to close that week. *Id.* at ¶ 23 (emphasis in original). Lovrovich confirmed the deal had "closed" the following morning. *Id.* at ¶ 25. Later on March 11, Lovrovich informed Plaintiff that all the documents were signed and that the money wires had been processed. *Id.* at ¶ 26. Lovrovich then sent the Terms Sheet to Plaintiff via DocuSign and asked Plaintiff to attend Town Hall sessions (collectively, "the Town Hall") scheduled for March

---

[1] In a related case pending before this Court, Boeing alleges that its consent was fraudulently obtained by these Defendants. *See The Boeing Company v. Ten Oaks Management, LLC*, 3:22-cv-481, 2023 WL 42241679 (W.D.N.C. June 28, 2023).

3

14 at ASTECH's offices in Santa Ana, California. *Id.* at ¶¶ 28-31. Plaintiff asserts that he did not accept ASTECH's employment offer at that time.

On March 13, Plaintiff, invited by Defendants, joined a conference call to discuss the Town Hall, a series of informational sessions designed to recruit ASTECH employees, who had been administratively terminated the prior business day, to accept new employment offers. *Id.* at ¶¶ 35, 36. Everyone agreed that Plaintiff would speak about his own professional biography between Richeson introducing himself and Richeson introducing Ten Oaks Operating Partner Mads Adams. *Id.* at ¶ 37. Plaintiff did not object when he saw that Defendants had included his information on a PowerPoint slide indicating he was "associated" with Ten Oaks. *Id.* Plaintiff then attended the Town Hall on March 14. *Id.* at ¶ 39. Plaintiff alleges that Defendants made multiple misrepresentations at the Town Hall, including assertions that Ten Oaks invested its own money in ASTECH, that Ten Oaks was a "family office" investment group rather than private equity investor, and that Defendants had bought ASTECH from its previous owner. *Id.* at ¶ 42. Plaintiff alleges these misrepresentations were made at each Town Hall session. *Id.* at ¶¶ 40-44.

On March 15, Plaintiff called Bay Area Retina, which is also in California, to decline their offer to become CEO. *Id.* at ¶ 48. Later that evening, Plaintiff went to dinner with Lovrovich who allegedly told Plaintiff that his prior convictions about ASTECH's promising future were stronger now based on his growing understanding of the company. *Id.* at ¶¶ 49-50. Lovrovich further told Plaintiff that Ten Oaks intended to obtain additional financing for ASTECH. *Id.* at ¶ 50. On March 16, Plaintiff signed the Terms Sheet and formally accepted the ASTECH CEO position. *Id.* at ¶ 51.

In the evening of March 16, Ten Oaks member Michael Hahn and his wife co-hosted a dinner at their home in Beverly Hills, California to celebrate the acquisition of ASTECH and so that everyone could meet Plaintiff. *Id.* at ¶ 57. At the dinner, Plaintiff learned that ASTECH had

4

allegedly been a "pay-to-take" deal in which Melrose paid Ten Oaks $7 million to take ASTECH off its hands due to its unprofitable nature, poor customer contacts and product quality, and GKN's lack of capital investment. *Id.* at ⁋ 58. Plaintiff allegedly further learned that Ten Oaks had not invested any money in ASTECH and had no intention of doing so in the future. *Id.* at ⁋ 59. Instead, Ten Oaks allegedly had taken ASTECH as a "service" to Melrose to help the latter discretely divest the business. *Id.* at ⁋⁋ 61-62. In other words, Plaintiff says he was informed that Ten Oaks "acquired" ASTECH to help Melrose "dump" it and the payment from Melrose was intended to compensate Defendants for "mak[ing] ASTECH and its Boeing contract go away." *Id.* at ⁋⁋ 69, 70. Lovrovich allegedly also told Plaintiff that Defendants obscured the nature of the payment from Melrose to avoid raising Boeing's suspicion. *Id.* at ⁋ 72. Plaintiff further learned that Defendants allegedly charged management fees retroactively so as to keep these fees off the books and to give Ten Oaks leeway to charge whatever fee it wanted to at a later time. *Id.* at ⁋ 78.

Notwithstanding these disclosures, Plaintiff began his new job shortly after this dinner. *Id.* at ⁋ 99. Plaintiff contends that despite making progress addressing ASTECH's challenges, he was repeatedly frustrated by Defendants' lack of monetary investment in the company. *Id.* at ⁋⁋ 99, 101-102. As ASTECH's CEO, Plaintiff held conversations with customers, including Boeing, in which he explained that ASTECH needed to raise prices in order to be financially solvent. *Id.* at ⁋ 104. Existing customers were "astonished" to hear ASTECH needed to raise prices. *Id.* at ⁋ 105. In response to customer's concerns, Plaintiff alleges that he did not comment on them directly, in part because anything he said "might confirm or contradict the representations that customers insisted were made by the Defendants before Plaintiff's involvement." *Id.* at ⁋ 106. With respect to Boeing, Plaintiff, working with Ten Oaks' Assistant General Counsel and ASTECH's Program Manager, emailed a demand letter to the company informing their procurement agent that price

increases would be necessary. *Id.* at ¶¶ 111-113. Boeing refused. *Id.* at ¶ 114. This time working with ASTECH's General Counsel, Plaintiff sent an email to Boeing stating that ASTECH would "pause" manufacturing and shipping product until the issues identified in the prior email, namely the price increase, could be resolved. *Id.* at ¶¶ 124-126.

The Defendants, Plaintiff, and Boeing all met on May 25, 2022, in Everett, Washington. *Id.* at ¶ 123. During the meeting, Defendants allegedly made multiple false representations to Boeing, including that Ten Oaks had and would continue to invest in ASTECH, that ASTECH intended to extend its facility lease, that Ten Oaks did not engage in quick resale or rapid liquidation of businesses, that Ten Oaks did not charge a management fee, and that Lovrovich had more experience than he actually possessed. *Id.* at ¶¶ 138-170. For his part, Plaintiff did not confirm or deny these assertions; rather he remained silent. *Id.* at ¶ 141.

On May 26, 2022, Richeson allegedly told Plaintiff that he and Lovrovich "are very disappointed with the meeting yesterday… you really threw [Lovrovich] under the bus!" *Id.* at ¶ 176. Richeson allegedly criticized Plaintiff for remaining silent and not backing up the statements made to Boeing during the meeting. *Id.* Plaintiff responded that he would "not condone or support obvious misrepresentations" because doing so would be unethical and illegal. *Id.* at ¶ 178. Richeson informed Plaintiff that he thereafter would become more involved in ASTECH's work and Plaintiff was "going to take direction from [Richeson]." *Id.* at ¶ 179. On May 27, 2022, Plaintiff returned to his home in Virginia. *Id.* at ¶ 188. That same day, he joined a conference call with Richeson and Lovrovich, who told him that he was fired, effectively immediately. *Id.* at ¶ 188.

Plaintiff filed this action in April 2023. In response to the Second Amended Complaint, Defendants filed their motion to dismiss, which is now ripe for the Court's decision.

### III. DISCUSSION

In the Second Amended Complaint, Plaintiff brings claims for fraudulent inducement; negligent misrepresentation; wrongful termination in violation of California public policy; unlawful retaliation in violation of California Labor Code ("CLC") §§ 98.6, 232.5, and 1102.5; and unlawful retaliation in violation of Virginia Code § 40.1-27.3. The Court will address each count in the order discussed in the Defendants' motion to dismiss.

### A. Choice of Law

Federal courts sitting in diversity apply the substantive law of the forum state, including the forum state's choice of law rules. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). In North Carolina, tort claims are governed by "the law of the state where the plaintiff has actually suffered harm." *Apex Tool Group LLC v. Cyderes, LLC*, 3:23-cv-00236, 2023 WL 7490146, at *4 n.1 (W.D.N.C. Nov. 13, 2023) (quoting *Harco Nat. Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 726 (N.C. Ct. App. 2010)). Generally, courts determine the place of injury by analyzing "the state where the last act giving rise to the alleged injury occurs." *Carter v. Bank of America, N.A.*, 1:11-cv-326, 2014 WL 70072, at *11 (W.D.N.C. Jan. 9, 2014). Plaintiff asserts California law, or Virginia law in the alternative, applies and has brought claims under both. *See* Doc. No. 25 at 12. Defendants respond that the Second Amended Complaint lacks any factual allegations that plausibly suggest Defendants violated the law of either state. *See* Doc. No. 24 at 19-20.

When Plaintiffs bring claims under the laws of two separate states, courts generally find that it is "premature to make a decision regarding choice of law at [the motion to dismiss] stage of the proceedings" because these inquiries "may be very fact intensive and more appropriately undertaken after the record is sufficiently developed." *Movement Mortg., LLC v. McDonald*, No. 3:17-cv-000716, 2018 WL 6733953, at *3 (W.D.N.C. Nov. 6, 2018), *report and recommendation*

7

*adopted*, No. 3:17-cv-00716, 2019 WL 452773 (W.D.N.C. Feb. 5, 2019) (quoting *Terry v. Swift Transportation*, No. 1:16-cv-256, 2017 WL 1013074, at *7 (M.D.N.C. Mar. 14, 2017)); *see also Carter*, 2014 WL 70072, at *11; *Clark Material Handling, Inc. v. Toyota Material Handling, U.S.A., Inc.*, No. 3:12-cv-510, 2012 WL 6107682, at *1 (W.D.N.C. Dec. 10, 2012). Thus, the Court need not decide whether California or Virginia state law applies at this time, but instead must decide "whether the plaintiff states a claim under one of the potentially applicable bodies of law." *ABC Phones of N.C., Inc. v. Yahyavi*, No. 5:20-CV-0090-BR, 2020 WL 4208923, at *5 (E.D.N.C. July 22, 2020) (citing *Terry*, 2017 WL 1013074, at *7).

### B. Inducement Claims

Plaintiff brings two fraud-based claims: (1) fraudulent inducement and (2) negligent misrepresentation, for which Defendants assert there are insufficient factual allegations to support a plausible claim. Both parties assess these claims under California law,[2] so the Court will do so as well.

#### 1. Fraudulent Inducement

To allege fraudulent inducement in the employment context under California law, a plaintiff must allege "(1) that the employer misrepresented or concealed a material fact during the hiring process, (2) knowledge of the falsity of the fact or lack of reasonable grounds for believing it to be true, (3) an intent to induce reliance, (4) justifiable reliance by the employee, and (5) resulting damages." *Garamendi v. Golden Eagle Ins. Co.*, 27 Cal. Rptr.3d. 239, 253 (Cal. Ct. App. 2005) (quoting *Lazar v. Superior Court*, 49 Cal. Rptr.2d 377, 380 (Cal. 1996)). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure, requires that "[i]n alleging fraud or mistake, a party

---

[2] Defendants accede to the use of California law on the grounds it is not meaningfully different than North Carolina or Delaware law with respect to these claims. *See* Doc. No. 24-1 at 8 n.1.

must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Fourth Circuit has held that the "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making misrepresentations and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The purpose of this higher pleading standard is to "provide notice to a defendant of its alleged misconduct, ... prevent [ ] frivolous suits, ... eliminat[e] fraud actions in which all the facts are learned after discovery, and ... protect[ ] defendants from harm to their goodwill and reputation." *United States ex rel. Nathan v. Takeda Pharms. N. Ap., Inc.*, 707 F. 3d 451, 456 (4th Cir. 2013). Thus, to satisfy Rule 9(b), Plaintiff must "set forth the 'who, what, when, where, and how of the alleged fraud' before access to the discovery process should be granted." *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F. 3d 370, 379 (4th Cir. 2008).

In the Second Amended Complaint, Plaintiff alleges that Defendants made multiple false representations to Plaintiff (and others), including that Ten Oaks had obtained Boeing's consent to the transaction, had invested its own money to acquire ASTECH, would further invest in ASTECH, and that Defendants would obtain financing for ASTECH. *See* Doc. No. 23 at ¶¶ 42-44, 191. Plaintiff has further alleged that prior to receiving his hiring Terms Sheet, Defendant Lovrovich told Plaintiff that Defendants had confirmed a closing price with Melrose and money had been wired, suggesting that Defendants had paid to acquire ASTECH, although that was allegedly not the case. *Id.* at ¶¶ 22-26. According to the Second Amended Complaint, Defendants failed to explain that they had been paid to takeover ASTECH due to ASTECH's prior owner tiring

of the company's lack of profit and Ten Oaks' motivation to agree to the deal was to help Melrose preserve GKN's commercial relationships with Boeing and other costumers. *Id.* at ¶¶ 58-59, 68-69. Moreover, Defendants allegedly minimized the risk of a lawsuit by shielding cash reserves in the owners' personal bank account (so that Ten Oaks would have fewer assets at risk), included the General Counsel on emails to protect communications from discovery, and otherwise failed to do due diligence. *Id.* at ¶¶ 64-67. Defendants allegedly understood the $7 million payment "to cover anything and everything required to make ASTECH go away" and Defendants disguised the true nature of the payment to Boeing to avoid raising suspicion *Id.* at ¶¶ 70-72.

The Court finds that such misrepresentations could be found to be material to employment negotiations between Plaintiff and the Defendants because "a reasonable man would attach importance to its existence … in determining his choice of action in the transaction in question." *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 977 (Cal. 1997), *as modified* (July 30, 1997) (citations omitted). Thus, Plaintiff has plausibly alleged that Defendants concealed the true nature of their business and the relevant purchase transaction to induce Plaintiff to accept the CEO position. Moreover, because Defendants so readily explained their true alleged intentions shortly after Plaintiff had accepted the CEO role, the Court further finds Plaintiff has plausibly alleged Defendants knew their original information to be false at the time of Plaintiff's hiring.

It can be further inferred from the pleadings that the alleged misrepresentations in this case were intended to induce reliance. The Court finds it plausible that the decision not to inform Plaintiff of the deal's true nature before he accepted the CEO role was meant to induce him to sign the Terms Sheet and take the job. Thus, Plaintiff has met the third element.

Moreover, Plaintiff has sufficiently plead that he actually and justifiably relied on those misrepresentations. "Actual reliance occurs when a misrepresentation is 'an immediate cause of [a

10

Case 3:23-cv-00203-KDB-DCK    Document 27    Filed 02/20/24    Page 10 of 16

plaintiff's] conduct, which alters his legal relations,' and when, absent such representation, 'he would not, in all reasonable probability, have entered into the contract or other transaction.'" *Engalla*, 938 P.2d at 919 (citations omitted). "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Engalla*, 938 P.2d at 977 (citations omitted). Even without this presumption, the Court finds it is plausible that Plaintiff would not have accepted this role if he knew Defendants intended to make ASTECH "go away" and had already affirmatively concealed the nature of the deal from third parties such as Boeing. *See* Doc. No. 23 at ¶ 70.

Lastly, Plaintiff has claimed plausible damages by alleging that he "turned down alternative work at a higher salary based on the mistaken belief that the work offered by Defendants was superior." *Id.* at ¶ 193. Although Plaintiff will need to prove those damages with more specificity at later stages of the proceeding, he has met his burden at this time.

In sum, the Court finds that Plaintiff has plausibly alleged fraudulent inducement with particularity.

### 2. Negligent Misrepresentation

Next, with respect to his claim of negligent misrepresentation, Plaintiff must plausibly allege "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 89 Cal. Rptr. 3d 473, 483 (Cal. Ct. App. 2009). As with fraudulent inducement, the heighted pleading standard for fraud applies to this claim. In fact, California courts generally hold that "the causal elements, particularly the allegations of reliance, must be specifically pleaded." *Id.* Plaintiff's negligent misrepresentation

11

claim in practical effect reprises his claim of fraudulent inducement. Therefore, the Court reincorporates here its analysis of fraudulent inducement for these substantially similar elements and finds that Plaintiff has plausibly and specifically alleged a claim for negligent misrepresentation.

### C. Wrongful Termination and Retaliation Claims

Plaintiff brings five claims regarding his termination, four under California law and one under Virginia law (Counts 3-7). However, because Defendants do not challenge these claims sequentially, the Court will address them in the same order as they are discussed in the motion to dismiss.

#### 1. Wrongful Termination in Violation of Public Policy (*Tameny* Claim) (Count 3)

California "recognize[s] a public policy exception to at-will employment." *Green v. Ralee Engineering Co.*, 960 P.2d 1046, 1052 (Cal. 1998). This exception, typically called a *Tameny* claim, is "limited to those claims finding support in an important public policy based on a statutory or constitutional provision." *Id.* at 1054. Plaintiff brought this claim against all of the Defendants in his Second Amended Complaint, but Defendants contend that this type of claim can only be brought against employers, not individual supervisors (i.e. Lovrovich and Richeson). In his Response, Plaintiff agrees that the *Tameny* claims against Lovrovich and Richeson cannot proceed. *See* Doc. No. 25 at 11 n.1. Thus the Court will dismiss the *Tameny* claims against Lovrovich and Richeson.

However, because the other Defendants did not move to dismiss the *Tameny* claims against them, those claims will proceed.

### 2. California Labor Code § 232.5 (Count 6)

Under the California Labor Code, no employer may "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." Cal. Lab. Code § 232.5(c). Working conditions are "conditions determined by the employer *as a condition of employment*." *Fleeman v. Cnty. of Kern*, No. 1:20-cv-00321, 2023 WL 8375658, at *6 (E.D. Cal. Dec. 4, 2023) (emphasis in original). Examples include "attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature, lighting, uniforms, hair requirements, breaks, restroom facilities, and 'even one's required attitude." *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1150 (S.D. Cal. 2018). "[B]eing required to assist in fraud" can be a working condition under California law. *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, No. 16-cv-737, 2017 WL 3174542, at *9 (S.D. Cal. July 26, 2017).

Plaintiff asserts that on May 26, 2022, Richeson told him that he and Lovrovich were disappointed in Plaintiff for allegedly throwing Lovrovich under the bus during a meeting with Boeing that occurred on May 25, 2022. *See* Doc. No. 23 at ¶ 224. He further alleges that Richeson criticized him for remaining silent and that his refusal to speak up in support of Lovrovich's statements at the meeting made Defendants look bad to Boeing. *Id.* Plaintiff was terminated less than forty-eight hours after Richeson expressed his frustration, plausible evidence of a causal link between Plaintiff's discharge and his conduct in the meeting. *Id.* at ¶ 226; *see Zirpel v. Alki David Prods., Inc.*, 310 Cal. Rptr. 3d 730, 742 (Cal. Ct. App. 2023), *reh'g denied* (July 10, 2023) (quoting *Arteaga v. Brink's, Inc.*, 77 Cal. Rptr.3d 654, 676 (Cal. Ct. App. 2008)).

However, the Court finds that Plaintiff has not adequately plead an actionable "disclosure," an essential element of a claim under CLC § 232.5. Other provisions of the CLC define

13

"disclosure" in this context as "to reveal something that was hidden and not known." *Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 858 (2012) (applying the definition to CLC § 1102.5). California law extends that definition to CLC § 232.5. *See Guthmann v. Classic Residence Management Limited Partnership*, 16-cv-2680, 2017 WL 3007076, at *17-18 (N.D. Cal. July 14, 2017) (finding that plaintiff's disclosure to those who already knew about the allegedly unlawful practices did not satisfy § 1102.5(b) or § 232.5). Here, Plaintiff's "disclosure" was telling Richeson that he would not "condone or support obvious misrepresentations to Boeing" including those that are "contrary to what you" and the other Defendants had told Plaintiff *See* Doc. No. 23 at ⁋ 178. Thus, because Plaintiff did not allege that he "disclosed" this information to someone unaware of the allegedly unlawful practices, he failed to plead a claim under CLC § 232.5.

This portion of the motion to dismiss will accordingly be granted and Plaintiff's CLC § 232.5 claims will be dismissed.

### 3. California Labor Code § 98.6 (Count 5)

"Section 98.6 prohibits an employer from retaliating against an applicant or employee because the applicant or employee exercised a right afforded him or her under the Labor Code." *Garcia-Brower v. Premier Auto. Imports of CA, LLC*, 269 Cal. Rptr. 3d 856, 864 (Cal. Ct. App. 2020). Thus, a plaintiff must show that "(1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 575 (9th Cir. 2022) (citing *St. Myers v. Dignity Health*, 257 Cal. Rptr. 3d 341, 352 (Cal. Ct. App. 2019)).

Protected activity includes violations of other sections of the CLC. "By its terms, section 98.6 incorporates violations of other sections of the Labor Code, including section 1102.5." *People*

14

*ex rel. Garcia-Brower v. Kolla's, Inc.*, 529 P.3d 49, 58 (Cal. 2023). As noted below, Defendants do not challenge the sufficiency of Plaintiff's CLC § 1102.5 claim. Thus, the Court finds that Plaintiff has plausibly alleged that he engaged in a protected activity.

As for the second element, Plaintiff has alleged that he was terminated for his failure to assist the Defendants with their alleged fraud, a clearly adverse employment decision. And, third, as explained above, there is a plausible (almost immediate) causal link between Plaintiff refusing to assist the Defendants and his subsequent termination. Thus, Plaintiff has plausibly alleged a violation of CLC § 98.6.

### 4. California Labor Code § 1102.5 (Count 4)

Defendants do not challenge this claim in their motion to dismiss or reply brief. *See* Doc. Nos. 24-1, 26. Thus, the Court will not address the factual sufficiency of this claim at this time.

### 5. Virginia Code § 40.1-27.3 (Count 7)

Under Virginia law, an employer may not retaliate against an employee who "[r]efuses an employer's order to perform an action that violates any federal or state law or regulation and the employee informs the employer that the order is being refused for that reason." Va. Code. § 40.1-27.3. Defendants contend that Plaintiff failed to plausibly allege that Defendants committed any tortious activity in the state of Virginia. *See* Doc. No. 24-1 at 23-24. The Court disagrees and finds that violations of Va. Code. § 40.1-27.3 are plausible. The statute notably includes "*any* federal or state law." Such broad language presumably includes California law. As discussed above, the Court finds that Plaintiff has plausibly alleged that Defendants retaliated against Plaintiff for his refusal to participate in the meeting with Boeing by terminating his employment and that Plaintiff had informed Defendants before his termination that he refused to participate in their alleged fraud,

all potentially in violation of California (if not also Virginia) law. Therefore, Plaintiff has plausibly plead a claim under Va. Code. § 40.1-27.3.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 24) is **GRANTED in part** and **DENIED in part** as described in this Order; and

2. This case shall **proceed toward trial on the merits on all claims except the CLC § 232.5 claim (Count 6)** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 20, 2024

Kenneth D. Bell
United States District Judge